**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 09-1545**

───────────

JEANNE BIGGS; CHARLES BIGGS,

        Plaintiffs – Appellants,

   and

BORROWER NO. 0124854613, Mr. and Mrs. B.,

        Plaintiff,

       v.

EAGLEWOOD MORTGAGE, LLC; COUNTRYWIDE BANK, N.A.,

        Defendants – Appellees,

MARIA ABREU,

        Movant,

   and

SETTLEMENT SOLUTIONS; AURORA LOAN SERVICES LLC; LEHMAN
MORTGAGE CAPITAL; LEHMAN BROTHERS; KEVIN DECKER; MIKE
SWEENEY; DONALD CROWE; MICHAEL A. PERRY,

        Defendants.

───────────

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Peter J. Messitte, Senior District
Judge.  (8:07-cv-02768-PJM)

───────────

Submitted:  November 2, 2009    Decided:  November 30, 2009

───────────

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Mary E. Goulet, WHITHAM CURTIS CHRISTOFFERSON & COOK, PC, Reston, Virginia, for Appellants. Charles S. Hirsch, Glenn A. Cline, BALLARD SPAHR ANDREWS & INGERSOLL, LLP, Baltimore, Maryland; Richard L. Miller, MONSHOWER MILLER & MAGROGAN, LLP, Columbia, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jeanne and Charles Biggs ("the Biggses") appeal the district court's order granting summary judgment to Appellees Countrywide Bank FSB and Eaglewood Mortgage, LLC, (collectively "Appellees") on the Biggses' action under the civil RICO statute, 18 U.S.C. § 1964 (2006). On appeal, the Biggses assert that the district court erred in applying a reliance element to their claims of mail fraud; determining the Biggses had prior knowledge of the possibility of negative amortization; failing to view the facts in the light most favorable to the Biggses; and improperly deciding questions of the Biggses' knowledge and reliance. We affirm.

We review de novo a district court's order granting summary judgment and view the facts in the light most favorable to the nonmoving party. Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Bogart, 396 F.3d at 555. Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

I.  Reliance

RICO provides a private right of action and treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962" of the RICO's criminal component.  18 U.S.C. § 1964(c) (2006).  Section 1962 contains RICO's criminal prohibitions; pursuant to 18 U.S.C. § 1962(c), it is

> "[U]nlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  The term "racketeering activity" is defined to include a host of so-called predicate acts, including "any act which is indictable under . . . section 1341 (relating to mail fraud)."

Bridge v. Phoenix Bond & Indemnity Co., 128 S. Ct. 2131, 2137-38 (2008) (quoting 18 U.S.C. §§ 1961(1)(B), 1962(c) (2006)).  Mail fraud occurs when an individual, having devised a plot to defraud, uses the mail in order to further their plot.  18 U.S.C. § 1341 (2006).  "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contains no false information."  Bridge, 128 S. Ct. at 2138.  Thus, RICO allows for a private civil action to any individual injured through a pattern of conduct constituting mail fraud.

4

On appeal, the Biggses assert that the district court erred in requiring them to prove reliance on Countrywide's alleged mail fraud.  The Biggses contend this requirement contravenes the Supreme Court's recent decision in <u>Bridge</u>.  This court reviews such questions of statutory interpretation de novo.  <u>See</u> <u>United States v. Pierce</u>, 278 F.3d 282, 286 (4th Cir. 2002).

In <u>Bridge</u>, the Supreme Court held that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud."  <u>Bridge</u>, 128 S. Ct at 2139.  Though the Supreme Court noted that a plaintiff would generally be unable to demonstrate causation without showing at least some form of reliance, "the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action . . . does not transform reliance itself into an element of the cause of action."  <u>Id.</u> at 2144.

Though the district court was correct in determining that the instant situation was somewhat different from the facts in <u>Bridge</u>, it nevertheless erred by finding that "<u>Bridge</u> did not eliminate reliance as an element of a RICO claim predicated on mail fraud."  In so holding, the district court improperly distinguished <u>Bridge</u> from the instant case by citing to

5

footnotes and other dicta in which the Supreme Court expressed its view that it would be challenging to demonstrate proximate cause without also proving some kind of reliance. See, e.g., Bridge, 128 S. Ct. at 2143 n.6 ("Of course, a misrepresentation can cause harm only if a recipient of the misrepresentation relies on it), 2144 ("Of course, none of this is to say that a RICO plaintiff who alleges injury by reason of a pattern of mail fraud can prevail without showing that someone relied on the defendant's misrepresentations") (internal quotation marks and citations omitted). Based on this language, the district court found that Bridge's holding was limited to cases of third-party reliance.

However, contrary to the finding of the district court, such statements do not restrict Bridge's holding. Though Bridge concerned a plaintiff who had been harmed by a third-party's reliance on the defendant's misrepresentations, we do not read its holding as limited to this particular situation. The Supreme Court explained that, though common law fraud required a showing of reliance, "[n]othing on the face of the relevant statutory provisions imposes such a requirement." Bridge, 128 S. Ct. at 2138. Instead, using the mail in furtherance of a scheme to defraud is a predicate act of racketeering under RICO, even if there is no reliance on the misrepresentation. Id. If the defendant has engaged in a

6

pattern of such behavior, he will be liable under RICO, without anyone actually relying on a fraudulent misrepresentation.  Id. Therefore, we agree with the Biggses that Bridge's holding eliminates the requirement that a plaintiff prove reliance in order to prove a violation of RICO predicated on mail fraud.

However, we may affirm a district court's grant of summary judgment on any legal basis supported by the record; we need not rely upon the grounds asserted by the district court. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  Therefore, despite this error by the district court, we affirm the district court's grant of summary judgment to Countrywide, as the Biggses failed to prove, or even allege, any fraudulent behavior on the part of Countrywide or Eaglewood. The Biggses allege three different purportedly fraudulent actions on the part of the Defendants:

> Existing homeowners were re-financed with payment option adjustable rate mortgage loans that were at least one of the following: unsuitable for the homeowner; less suitable than at least one other financing approach available to the homeowner; more costly to the homeowner than at least one other suitable financing approach available to the homeowner with the additional cost inuring to the benefit of the enterprise or a member or members thereof.

In support of these conclusory allegations, the Biggses repeatedly state that the Defendants failed to tell them that "a fixed rate mortgage . . . was more suitable for [the Biggses] than [a] . . . payment option ARM."  Additionally, the Biggses

7

contend that the Defendants utilized various agents in order to "cloak the . . . payment option ARM with seeming legitimacy and safety," making various statements to the Biggses about how a payment option ARM would benefit them.

However, despite these allegations, the Biggses still fail to demonstrate, or even allege, that they were misled about any particular loan term. The adjustable rate rider of each payment option ARM explicitly delineated the schedule for changes in the interest rate and the monthly payment amount, as well as the possibility of negative amortization. As noted by the district court, the Biggses were "active and continuous shoppers of mortgage financing" and "possessed obvious and extensive experience with both fixed-rate loans and ARM loans" as evidenced by the fact that, beginning in 2003, the Biggses refinanced their mortgage five times in a span of four years. This familiarity with multiple loan types, combined with the fact that each loan complained of explicitly put the Biggses on notice of the possibility of negative amortization, supports our conclusion that the district court did not err in granting summary judgment for the Defendants.

## II.  Other Issues

Next, the Biggses contend that the district court "wrongly construed the 1997 mortgage as negatively amortizing."

In effect, the Biggses argue that this improper construction led the district court to incorrectly determine that the Biggses understood the principle of negative amortization. However, as explained above, the possibility of negative amortization was explicitly delineated in the adjustable rate rider to each of the payment option ARMs of which the Biggses now complain. Therefore, regardless of whether the Biggses' 1997 mortgage had the possibility for negative amortization, the Biggses were made aware of this possibility before entering into each of the ARM mortgages with Countrywide.

The Biggses also assert that "the district court erred by [fail]ing to identify reasonable inferences in Homeowner's favor." It appears that the Biggses assign error to the district court's conclusion that they were experienced mortgage shoppers, as well as Countrywide's alleged mischaracterization in its pleadings of the 2004 loan as having an interest rate of 4.269 percent for the length of the loan. However, as previously explained, the fact that the Biggses refinanced their mortgage five times in a span of four years strongly supports a finding that the Biggses understood the terms of the mortgages, and were not innocent "victims" of a fraud scheme. Additionally, though Countrywide appears to have mischaracterized the 2004 mortgage as having a lifetime interest rate of 4.269 in its memorandum in support of its motion to

9

dismiss, the Biggses fail to demonstrate how this error in the pleadings had any bearing whatsoever on whether the Biggses understood the mortgages into which they entered.[*]  Therefore, these contentions are without merit.

Finally, the Biggses assert that the district court erred in improperly deciding questions of "knowledge and reliance" when considering the Biggses' claims of fraud and negligent misrepresentation, incorrectly relying on "Countrywide's interpretation of what the undisputed evidence of record shows."  This contention is also without merit.  The Biggses' amended complaint is bereft of a single allegation of purposeful misrepresentation or reliance thereon.  Moreover, as we have described, all the pertinent information regarding the loans, their adjustable interest rates, and the possibility of negative amortization was disclosed to the Biggses in the form of detailed adjustable rate riders.  The Biggses initialed each

---

[*]  Moreover, any such error is clearly the product of a clerical error and not evidence of Countrywide's deceit or own misunderstanding of its loans.  In the pleadings, Countrywide incorrectly described the loan as having an interest rate of 4.269 percent, when in actuality this was the calculated APR of the loan appearing in the Truth-in-Lending-Disclosure-Statement ("TILDS").  The initial interest rate was 1.750 percent, adjusted monthly.  This discrepancy is clearly explained in the "Definition" section of the TILDS, which states that the interest rate found in the rider is but one of several charges included in the APR, which results in an APR higher than the interest rate shown in the rider.

10

page of the adjustable rate rider for the first loan indicating their review of it, and the Biggses signed the final page of each of the three riders, each time indicating that they accepted and agreed to the terms delineated in the rider. Accordingly, because the Biggses fail to present any evidence, or even raise any serious possibility, of misrepresentation or their reliance thereon, we find that the district court correctly granted summary judgment as to their claims.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11